UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

ANDREW B. SHEETS,                                    Case No. 2:25-cv-500-KCD-NPM

Plaintiff,

v.

TONY PRIBBLE, individually,

JOANNE VERNON, individually,

and CHARLOTTE COUNTY, a political subdivision of the State of Florida,

Defendants.

_____/

RESPONSE TO DEFENDANTS, TONY PRIBBLE, JOANNE VERNON AND CHARLOTTE COUNTY'S MOTION TO DISMISS 2nd AMENDED COMPLAINT (Doc # 31)

Pro Se  ANDREW B. SHEETS, responses to DEFENDANTS, TONY PRIBBLE, JOANNE VERNON AND CHARLOTTE COUNTY'S MOTION TO DISMISS 2nd AMENDED COMPLAINT (Doc # 31)

2nd AC Herein JUDGE ORDER SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL(Doc #30)

MTD Herein DEFENDANTS, TONY PRIBBLE, JOANNE VERNON AND CHARLOTTE COUNTY'S MOTION TO DISMISS 2nd AMENDED COMPLAINT (Doc # 31)

**Legal standard**

1

Complaints brought *pro se* are "held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011).

Dismissal of a pro se complaint is **not warranted unless it appears beyond doubt** that the plaintiff can prove no set of facts that would entitle him to relief. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972)

Previously, we have held that we accept allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *White v. Lemacks,* 183 F.3d 1253, 1255 (11th Cir.1999). In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)

The standards that apply to dismissal under Fed.R.Civ.P. 12(b)(6) apply to dismissal under § 1915A(b)(1). *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). That is, although the complaint need not provide  detailed factual allegations, there "must be enough to raise a right to relief above the speculative level," and must contain enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570,127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007); see also *Watts v. Florida* Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007).

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 816 (2000) (citations omitted).

## Introduction

"Free speech is not just saying what you want to say, but it is having to hear things you don't want to hear."[1] **Charlie Kirk.**

---

[1] https://x.com/charliekirk11/status/851808482663817217?
ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E851808482663817217%7Ctwgr%5Eb8b6c31140c
126f563391e63885b481f2b161404%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fwww.newsbusters.org%2Fblogs%

It seems some people have selective hearing. However the body camera that plaintiff wore does not have selective hearing. When two parties claim that noise was the major disruption. Yet Plaintiffs verbal Protest was much louder, and never mentioned showing JOANNE VERNON and Tony Pribble's had an understanding on how they would testify. They willfully participated in this false testimony that resulted in the deprivation of Plaintiff's rights for one year.

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

## Law and Arguments

Plaintiff does not present a Prima Facia case that Tony Pribble engaged in Viewpoint Discrimination against the Plaintiff. **Plaintiff denies this.**

"On 6/24/2021 Plaintiff was engaged in a public protest on the public sidewalk behind the DMV on 410 Taylor St., S Annex Punta Gorda FL. This sidewalk is a traditional public forum, and even after county regulation it is still use as a traditional public forum." (2nd AC. ¶ 9)

"but when the government does choose to open a designated public forum, it is bound to respect the same First Amendment standards that applied in traditional public forums." Id. at *46 McDonough v. Garcia,* No. 22-11421 (11th Cir. 2024)

**Under Charlotte County rule 7 plaintiff was allowed to protest and the location of this protest was to be treated as a traditional public forum.**

"Plaintiff's speech was not only protected by the 1st amendment, Mr. sheet's protest was also protected by the Charlotte County facility rule 7.

2Ffree-speech%2Fgabriela-pariseau%2F2025%2F09%2F16%2F7-times-charlie-kirk-spoke-his-mind-free-speech

"Solicitation of petitions, pamphleteering, demonstrating, protesting or carrying banners or signs anywhere inside of County buildings or conveyances, or in areas where such activities are otherwise prohibited on County lands. However, these activities may be done in an orderly manner outside of the entryway of any County-owned building, on any public sidewalk or public right-of-way near or adjacent to any County-owned building, or in areas otherwise designated for expressive activity, provided they do not impede ingress or egress; interfere with the use of County facilities by visitors, employees or County officials; or harass visitors, employees or County officials." (Charlotte County facility rules 7.)

"Defendant Pribble and Sheets have a love hate relationship. Pribble has been covered under Plaintiffs journalism and is aware of his viewpoint.

Plaintiff was protesting a unconstitutional sign ordinance. This ordinance penalizes indecent speech on a sign.  Punta Gorda, Fla., Code of Ordinances, ch. 26, § 11.5(z).

It should be noted that part of plaintiffs protest was the display of a TV,  the broadcast of curse words on a television.  The volume of the television was extremely low, Plaintiffs voice and his verbal protest was much louder than what the TV was broadcasting.  It would be impossible for someone to claim; that they could hear the noises, and the TV yet not hear Plaintiff's voice.  Sounds that came from the TV we're part of plaintiff's protest much like the burning of a flag in *Texas v. Johnson*, 491 U.S. 397 (1989) or the Display of a jacket with the words F*ck the Draft, in *Cohen v. California*, 403 U.S. 15 (1971),

A test, an audit, Plaintiff was fishing.  Plaintiff knew the ordinance in question, that penalized signs that contained protected speech was unconstitutional. Plaintiff wanted to see; if words the government deemed indecent on signs, would also be deem indecent if they were on a TV." (2nd AC ¶ 14-17)

4

"Along with the Television plaintiff also had a sign that said Punta Gorda City Council are C*nts 4 killing Free Speech. Plaintiff did self censor, the word "Cunt" did have the u covered up." (2nd AC ¶ 24)

Plaintiff was engaged in a protest against the government. Tony Pribble is a government employee. Specifically plaintiff was protesting government employees for enforcing ordinances that targeted protected speech. Word like Fuck, shit, cunt and other vulgarities that would offended. Tony Pribble did tresspass Plaintiff for vulgarities that were being played on his TV. Plaintiff was hold Pribble accountable by protesting at a government building. The government did censor view that were opposed to its own showing a classic case of viewpoint discrimination.

"For one thing, "[s]uspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own." Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 86 (1st Cir. 2004). That principle applies with even more force here. Saunders and the Board were receiving public pressure from the media, community members, and the state Commissioner of Education, including for their decisions about Lincoln Memorial, the topic Saunders knew Huggins planned to speak about." (*HUGGINS,v SCHOOL DISTRICT OF MANATEE COUNTY,(*11th Cir 2025)

Mr. sheets did tell Defendant Pribble that he was legally protesting. Further more Exhibit A is video of the protest. (Protest ends 8:40 mark) However Pribble ignores and does not acknowledge Mr. Sheets Protest, show viewpoint discrimination.

"The test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed."Matal v. Tam, 582 U.S. ___ (2017)

"Tony Pribble the head of Charlotte County Security Trespassed Plaintiff for carrying a TV; that was broadcasting the words "fuck and shit". The volume of the TV was lower than one would speak in a normal voice.

**The following is a verbal interaction between plaintiff and Defendant Pribble.**

Defendant Pribble walks up and hands Plaintiff some of papers.

   a.  Defendant Pribble: "You are officially trespassed from this property."
   b.  Plaintiff: " For what?"
   c.  Defendant Pribble: "Violation of Rule number 10."
   d.  Plaintiff: "What is that?"
   e.  Defendant Pribble: " read it there it is disturbing county business."
   f.  Plaintiff: " I am not… I am legally Protesting. "
   g.  Defendant Pribble: " you are trespassed from this property"
   h.  Plaintiff:  "I am legally Protesting."
   i.  Defendant Pribble: " I'm gonna call the Punta Gorda Police Department and have you removed"

Plaintiff wish to continue with his peaceful protests. However Plaintiff submitted to the authority of Defendant Pribbles unlawful order, and did leave the public sidewalk.

**The issuing of the trespass warning was improper and showed viewpoint discrimination along with a retaliatory intent.**

Under Charlotte County facility rules Plaintiff should have been told what conduct he was engaged in that violated the rules and been given, a chance to stop. Instead Defendant Pribble went straight to the Tresspass warning and skipped the step informs the person what rule is being violated and asks that person to stop. Furthermore Pribble ignores the fact that Plaintiff states he's protesting.

6

Pribble then use the Premature Trespass warning as a weapon; and states he will be calling the Punta Gorda police.

    a. "If an individual fails to immediately cease conduct prohibited by these Rules upon request, a Trespass Warning may be issued by the County Administrator (or his or her designee) pursuant to County Ordinance 2016-027." (Charlotte County facility rules)(2nd AC ¶27-31)

Defendant Pribble on video (Exhibit A) at 1:47 claims Plaintiff is disturbing county business. Yet he never specifically states what exactly Plaintiff is doing to disturb county business.

**II. Plaintiff does not state a claim against Defendants for violation of Plaintiff's First Amendment Rights as Plaintiff was trespassed not for the speech broadcasted but rather for the disruption caused in a County Facility.(MTD P.7)  plaintiff denies this.**

There is no evidence or assertion that the Plaintiff was trespassed due to language being broadcasted but rather due to the disruption it caused within the County facility. (MTD P.8)

Plaintiff was issued a Trespass Warning because he was in violation of Charlotte County Facility Rules and Ordinances and not because he was undertaking any constitutionally protected speech. Further, the adverse action against him, specifically the issuance of the Trespass Warning, was not retaliatory as it was the logical outcome of the violation of the Facility Rules.(MTD P.9)

(Exhibit B) is the order from the court, a court that does not recognize the Constitution nor any constitutional arguments. it states the following :

"Ms. Vernon testified that while at work performing County business, she could hear loud noise or music being played through a television set outside of the Annex."

7

"Mr. Pribble testified that he was called to the South Annex on June 24, 2021 wherein he observed the Petitioner, Andrew Sheets, purposely playing loud music and video through a television set pointed directly at the entrance door to the South Annex."

"The television is playing loud music and/or video containing expletive language in a manner meant to direct the sound from the television directly towards and into the South Annex. While playing the music, Petitioner, who also appears to be the videographer of the Video, purports to be protesting restrictions on free speech by the County."

"Petitioner contended that his actions on the day in question were not disruptive, in part, because no County employee asked him to leave prior to being issued the Trespass Warning. Petitioner also contends he was lawfully protesting and exercising his First Amendment rights to free speech while doing so from a public area."

"In response, Petitioner restated his argument that his actions were not disruptive and they were protected by his First Amendment freedom of speech."

## FINDINGS OF FACT

Specifically, playing loud, expletive-filled music and video in close proximity to the South Annex entrance door from a television pointed directly at the entrance was unquestionably disruptive.

It has already been establish the TV and the music being broadcasted were part of sheets Protest.

"It should be noted that part of plaintiffs protest was the display of a TV, the broadcast of curse words on a television. The volume of the television was extremely low, Plaintiffs voice

8

and his verbal protest was much louder than what the TV was broadcasting. It would be impossible for someone to claim; that they could hear the noises, and the TV yet not hear Plaintiff's voice. Sounds that came from the TV we're part of plaintiff's protest much like the burning of a flag in *Texas v. Johnson*, 491 U.S. 397 (1989) or the Display of a jacket with the words F*ck the Draft, in *Cohen v. California*, 403 U.S. 15 (1971),

A test, an audit, Plaintiff was fishing. Plaintiff knew the ordinance in question, that penalized signs that contained protected speech was unconstitutional. Plaintiff wanted to see; if words the government deemed indecent on signs, would also be deem indecent if they were on a TV." (2nd AC ¶16,17)

## Clearly one cannot censor a 1st Amendment Protest by just labeling it disruptive.

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." ***United States v. Playboy Ent. Grp., Inc.***, 529 U.S. 803, 816 (2000) (citations omitted).

## The government has not proved its burden; the only argument the government, states is that loud music disrupts government business.

This argument does not fall into a segment of unprotected 1st amendment speech. Throughout defendant's motion to dismiss they cite a bunch of unbinding case law. They cite very little 11th circuit and Supreme Court case law that is actually binding upon this District Court.

Plaintiffs 1st amendment protest is afforded the highest levels of Protection.

"[S]peech on 'matters of public concern' ... is 'at the heart of the First Amendment's protection.' " ***Dun & Bradstreet, Inc. v. Greenmoss Builders***, Inc.,472 U.S. 749, 758–759, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (opinion of Powell, J.) (quoting ***First Nat. Bank of***

*Boston v. Bellotti,*435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ). The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open." *New York Times Co. v. Sullivan,*376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). That is because "speech concerning public affairs is more than self expression; it is the essence of self-government." *Garrison v. Louisiana,*379 U.S. 64, 74–75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,*461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (internal quotation marks omitted). *Snyder v. Phelps,* 562 U.S. 443, 451-52 (2011)

**Defendants claim, that because two city employees, claimed plaintiffs activity was disruptive is enough to trespass plaintiff and stop his protected speech. Simply put that is not how the 1ˢᵗ amendment works.** Plaintiff Denies this

> "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. *City of Houston v. Hill,* 482 U.S. 451 (1987)

Plaintiff was protesting unconstitutional laws. This Protest challenges government and public policies. Protest have caused monumental changes to this country. The volume being too loud on a TV is not good cause to violate Plaintiffs rights.

**Plaintiff's actions never even came close to this.**

"Held: Since the statute, by its words and as applied, purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate the described type of action, it falls within the condemnation of the First and Fourteenth Amendments.

Freedoms of speech and press do not permit a State to forbid advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg v. Ohio, 395 U.S. 444 (1969)

**Plaintiff never directed nor incited anyone.  There was no lawless action.**

Plaintiff is allowed to engage in disorder and disruption. That is why it is called protective activity.

> "Although the preservation of liberty depends in part upon the maintenance of social order, the First Amendment requires that officers and municipalities respond with restraint in the face of verbal challenges to police action, since a certain amount of expressive disorder is inevitable in a society committed to individual freedom, and must be protected if that freedom would survive. Pp. 482 U. S. 471 472." *City of Houston v. Hill*, 482 U.S. 451 (1987)

Accordingly, a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, *Chaplinsky v. New Hampshire*, supra, pp. 315 U. S. 571-572, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. *Terminiello v. Chicago,* 337 U.S. 1 (1949)

11

Plaintiff is allowed to protest even if it "stirs people to anger," "induces a condition of unrest," "have profound unsettling effects as it presses for acceptance of an idea".

## III. Plaintiff's claim of a civil conspiracy involving Defendants Joanne Vernon and Tony Pribble must be dismissed (MTD P. 9)

Conspiracy claims are pled correctly.

### CLAIM THREE:

### 42 U.S.C. § 1983

### First Amendment – Violation Regarding Free Speech and Press.

### Conspiracy to violate First Amendment rights

JOANNE VERNON and Tony Pribble's

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

Plaintiff's speech and expression were related to matters of public concern and were a political protest.

JOANNE VERNON and Tony Pribble did have an understanding to give a false testimony and leave out Plaintiffs verbal protest, and blame the citation on noise and music, coming from the television. This would have a chilling effect on Plaintiff's speech. This was an overt act in furtherance of the conspiracy. It also shows that JOANNE VERNON and Tony Pribble were willful participants in the conspiracy.

Tony Pribble did give a citation to plaintiff under county facility rule 10. This citation did stop plaintiff's First Amendment activity. This was an overt act in furtherance of the conspiracy. Tony Pribble did willfully participate in the conspiracy.

Because of JOANNE VERNON and Tony Pribble's, conspiracy to violate Plaintiffs rights, JOANNE VERNON and Tony Pribble did have an understanding to give a false testimony and leave out Plaintiffs verbal protest, and blame the citation on noise and music, coming from the television."

Plaintiff did lose his First Amendment right to protest on the public sidewalk behind the DMV on 410 Taylor St., S Annex Punta Gorda FL for one year because of this

JOANNE VERNON and Tony Pribble's actions sought to punish plaintiff for exercising his First Amendment rights; and to silence Mr. sheets future speech, and restrict plaintiff's freedom of expression.

JOANNE VERNON and Tony Pribble's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

JOANNE VERNON and Tony Pribble's were acting under color of State law.

JOANNE VERNON and Tony Pribble's conduct violated clearly established rights belonging to Andrew Sheets of which reasonable persons in Defendants' position knew or should have known.

JOANNE VERNON and Tony Pribble's engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights. 2nd AC ¶74-85)

13

**Furthermore it should be noted; the bar for a conspiracy low and does not require direct proof.**

We have admonished a district court for requiring direct proof of a conspiracy, saying that "nothing more than an 'understanding' and 'willful participation' between private and state defendants is necessary to show the kind of joint action that will subject private parties to § 1983 liability." *Bendiburg* , 909 F.2d at 469.

*Charles v. Johnson*, 18 F.4th 686, 697 (11th Cir. 2021)

> "On the basis of these underlying facts petitioner alleged that Kress and the Hattiesburg police had conspired (1) "to deprive [her] of her right to enjoy equal treatment and service in a place of public accommodation"; and (2) to cause her arrest "on the false charge of vagrancy."

*Adickes v. Kress Co.*, 398 U.S. 144, 149-50 (1970)

The second Amended complaint Give ample facts that Vernon and Pribble did have an understanding; and did willfully participate in the conspiracy to violate Plaintiffs First Amendment. In *Kress Co* the presents of a police officer was enough for the Supreme court to overturn the Second circuit court of Appeals, and place the decision of if a conspiracy is present, in the hands of the Jury.

> "as it did not foreclose the possibility that there was a policeman in the store while the petitioner was awaiting service (from which the jury could infer an understanding between the officer and an employee of respondent that petitioner not be served), and its failure to meet that burden requires reversal. Pp. 153-159.'

*Adickes v. Kress Co.*, 398 U.S. 144, 145 (1970)

**Defendants Tony Pribble and Joanne Vernon are entitled to Qualified Immunity as they were operating in their discretionary capacity. (MTD P. 11)**

14

Plaintiff has already cited many clearly established rights related to political protesting on public sidewalks.

**Plaintiff also had a right to conduct Free Press in a traditional public forum including the creation of speech and or journalistic material.**

The First Amendment protects the artist who paints a piece just as surely as it protects the gallery owner who displays it, the buyer who purchases it, and the people who view it.See Griswold v. Connecticut, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read . . . .").Any other interpretation of the First Amendment in this context would deprive it of the force and effect the Supreme Court has told us it deserves. See Ward, 491 U.S. at 790. A regulation limiting the creation of art curtails expression as effectively as a regulation limiting its display. The government need not ban a protected activity such as the exhibition of art if it can simply proceed upstream and dam the source. ***Buehrle v. City of Key West*, No. 14-15354 (11th Cir. 2015)**

It should also be noted in a very similar case, ***Berry v Smith and the City of Punta Gorda.*** 2:25-cv-299-JES-NPM.  Officer Smith Claimed that she was protected by qualified immunity when she ticketed Berry under an unconstitutional ordinance.

Officer Smith argues that she had probable cause to issue the citation, or at least arguable probable cause, and therefore she is entitled to qualified immunity. (Doc. #25, pp. 7, 9-11.) The Court concludes, however, Officer Smith did not have any level of suspicion, and therefore is not entitled to qualified immunity. As Berry points out (Doc. #27, pp. 7-8), long before Officer Smith issued the citation the United States Supreme Court had held that conveying a message which included the written word "fuck" was protected by the First Amendment. Cohen v. California, 403 U.S. 15, 20 (1971) (holding that the words "Fuck the Draft" written across a witness's jacket in a courtroom corridor, while distasteful, did not fall into a category of speech not protected by the First Amendment.) Shortly before the issuance of the citation, the Supreme Court reiterated

15

this principle. Mahanoy Area Sch. Dist. v. B. L. by & through Levy, 594 U.S. 180, 185 (2021) involved a high school student who posted an image of herself and a friend with middle fingers raised and the caption "Fuck school fuck softball fuck cheer fuck everything." The Supreme Court stated: This criticism did not involve features that would place it outside the First Amendment's ordinary protection. B. L.'s posts, while crude, did not amount to fighting words. See Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And while B. L. used vulgarity, her speech was not obscene as this Court has understood that term. See Cohen v. California, 403 U.S. 15, 19–20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). To the contrary, B. L. uttered the kind of pure speech to which, were she an adult, the First Amendment would provide strong protection. See id., at 24, 91 S.Ct. 1780; cf. Snyder v. Phelps, 562 U.S. 443, 461, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (First Amendment protects "even hurtful speech on public issues to ensure that we do not stifle public debate"); Rankin v. McPherson, 483 U.S. 378, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) ("The inappropriate . . . character of a statement is irrelevant to the question whether it deals with a matter of public concern"). Id. at 191. Thus, at the time Officer Smith issued the citation, the law was clearly established that Berry's written sign was not obscene and was protected by the First Amendment. No factual allegation in the SAC takes Berry's circumstances outside the broad scope of this law, and the SAC specifically pleads a lack of probable cause by Officer Smith. (, ***Berry v Smith and the City of Punta Gorda***. 2:25-cv-299-JES-NPM. P.12,13)

## **Plaintiff fails to establish elements of Monell that are required to bring a claim against Charlotte County.   Plaintiff Denies this.**

In this claim defendants sites a bunch of 9th circuit law none of this law is binding on this District Court.  Only 11th cir and Supreme court law is binding on this District court.

> "The stay in no way affects the duty of this panel and the courts in this circuit to apply now the precedent established by *Johnson* as binding authority. Thus, *Johnson* is the law in this circuit unless and until it is reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by this court sitting en banc. *See United States v. Machado, 804 F.2d 1537, 1543* (11th Cir. 1986).

16

**A. Plaintiff's claim that Charlotte County Facility Rule 10 is overbroad, void for vagueness, and facially unconstitutional has no basis(MTD P.15)** Plantiff Denies this

Claim is properly Pled:

**CLAIM FOUR: 42 U.S.C. § 1983 – First Amendment – Monell Liability (Facial Unconstitutionality: Vagueness and Overbreadth)**

**Charlotte County**

Plaintiff incorporates all preceding factual allegations as though fully set forth herein.

j.  Defendant **Charlotte County**, through its final policymakers, adopted and enforced **Charlotte County Facility Rule 10**, which provides: *"Disruptive, harassing or unsafe behavior, including conduct which interferes with County employees or County officials in the performance of their duties, or interferes with the proper use of the County facility by others."*

Rule 10 is **unconstitutionally vague** because it fails to provide ordinary persons with fair notice of what conduct is prohibited, and it invites arbitrary and discriminatory enforcement.

k.  Terms such as "disruptive," "harassing," and "unsafe" are undefined and inherently subjective.

l.  The Rule allows county employees to trespass or silence individuals based on personal disagreement, annoyance, or subjective discomfort, rather than any clear, objective standard.

m.  Vagueness doctrine requires laws to be drafted with sufficient clarity to prevent arbitrary enforcement. *See* **Grayned v. City of Rockford, 408 U.S. 104 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156 (1972).**

Rule 10 is also **unconstitutionally overbroad** because it prohibits a substantial amount of protected speech in traditional public forums, such as public sidewalks.

17

n. Political protest, journalism, and expressive activity are inherently "disruptive" to government business, yet they are core First Amendment rights.

o. The Rule criminalizes or suppresses speech that merely causes inconvenience, annoyance, or unrest, which is insufficient to justify restriction. *See* **Terminiello v. Chicago, 337 U.S. 1 (1949); City of Houston v. Hill, 482 U.S. 451 (1987).**

p. By prohibiting undefined "harassing" or "unsafe" behavior, the Rule sweeps in vast categories of protected expression, chilling speech far beyond any legitimate governmental interest.

As applied to Plaintiff, Rule 10 was used to trespass him from a public sidewalk while engaged in a political protest and journalistic activity. This enforcement demonstrates the Rule's unconstitutional breadth and vagueness, as it empowered county employees to silence Plaintiff's viewpoint under the guise of "disruption."

Defendant **Charlotte County**, as a municipal entity, is liable under **Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)** because:

q. Rule 10 is an official policy adopted and enforced by the County.

r. The Rule was the **moving force** behind the violation of Plaintiff's First Amendment rights.

s. The unconstitutional policy directly caused Plaintiff's deprivation of free speech, free press, and protest rights.

Plaintiff seeks declaratory and injunctive relief declaring **Charlotte County Facility Rule 10** unconstitutional on its face and as applied, as well as compensatory and punitive damages for the violation of his clearly established constitutional rights. (2nd AC ¶ 85- 91)

**B. Plaintiff has failed to show that Charlotte County Facility Rules are commonly applied to public sidewalks and therefore unreasonable. MTD P. 17**

Defendant once again cites non binding 9th circuit law.

Claim is pled correctly.

**Monell Claim – Unreasonable as Applied to Public Sidewalk**

**CLAIM FIVE: 42 U.S.C. § 1983 – First Amendment – Monell Liability (Unreasonable as Applied to Public Sidewalk)**

**Charlotte County**

Plaintiff incorporates all preceding factual allegations as though fully set forth herein.

Defendant **Charlotte County**, through its final policymakers, adopted and enforced **Charlotte County Facility Rule 10**, which provides: *"Disruptive, harassing or unsafe behavior, including conduct which interferes with County employees or County officials in the performance of their duties, or interferes with the proper use of the County facility by others."*

    t. Public sidewalks are **traditional public forums** where expressive activity enjoys the highest level of First Amendment protection. *See* **Snyder v. Phelps, 562 U.S. 443 (2011); United States v. Grace, 461 U.S. 171 (1983).**

Rule 10, as applied to Plaintiff's protest on the public sidewalk adjacent to the Charlotte County Annex, is **unreasonable** because it converts a traditional public forum into a speech-restricted zone designed to protect government employees from annoyance or disruption.

    u. The government may impose only **reasonable time, place, and manner restrictions** that are content-neutral, narrowly tailored, and leave open ample alternative channels of communication. *See* **Ward v. Rock Against Racism, 491 U.S. 781 (1989).**

    v. Rule 10 fails this test because it is not narrowly tailored. It prohibits expressive activity whenever a county employee claims "disruption," even if the speech is peaceful, political, and constitutionally protected.

19

w. The Rule prioritizes employee comfort and convenience over the public's right to protest, which is not a legitimate governmental interest sufficient to override First Amendment rights. *See* **Terminiello v. Chicago, 337 U.S. 1 (1949).**

As applied to Plaintiff, Rule 10 was used to trespass him from a public sidewalk while engaged in political protest and journalism. This enforcement demonstrates the Rule's **unreasonableness**, because:

x. Plaintiff's speech did not create a clear and present danger of lawless action. *See* **Brandenburg v. Ohio, 395 U.S. 444 (1969).**

y. Plaintiff's expressive activity was louder than the television broadcast, yet Defendants ignored his verbal protest and selectively targeted the TV noise, showing viewpoint discrimination.

z. The Rule was wielded as a weapon to silence Plaintiff's viewpoint, not to preserve legitimate public order.

Defendant **Charlotte County**, as a municipal entity, is liable under **Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)** because:

aa. Rule 10 is an official policy adopted and enforced by the County.

bb. The Rule was the **moving force** behind the violation of Plaintiff's First Amendment rights.

cc. The unconstitutional application of Rule 10 directly caused Plaintiff's deprivation of free speech, free press, and protest rights on a public sidewalk.

Plaintiff seeks declaratory and injunctive relief declaring **Charlotte County Facility Rule 10** unconstitutional as applied to public sidewalks, as well as compensatory and punitive damages for the violation of his clearly established constitutional rights.

"Next was the designated public forum, or "public property which the State has opened for use by the public as a place for expressive activity." Id. Examples given by Perry include 2 Those two standards, though similarly worded, are different. For a time, place, and manner restriction to be "narrowly tailored," it "need not be the least restrictive or

20

least intrusive means of" serving "the government's legitimate, content-neutral interests." Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989). Instead, "narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation" and it does not "burden substantially more speech than is necessary to further" that interest. Id. at 799 (alteration adopted and quotation omitted). "university meeting facilities," "school board meeting[s]," and "municipal theater[s]." Id. at 45–46. These forums and others like them need not be held open indefinitely for public speech, the Supreme Court said, but when the government does choose to open a designated public forum, it is bound to respect the same First Amendment standards that applied in traditional public forums." Id. at *46 McDonough v. Garcia,* **No. 22-11421 (11th Cir. 2024)**

## In Conclusion:

For the reason stated above plaintiff asks that all parts of DEFENDANTS, TONY PRIBBLE, JOANNE VERNON AND CHARLOTTE COUNTY'S MOTION TO DISMISS 2nd AMENDED COMPLAINT be denied. Plaintiff ask that all declaratory and injuctive relief be applied after trial.

12/10/2025

/s/ ANDREW B SHEETS PRO SE

11408 PEPPERDINE ST

PUNTA GORDA.FL,33955

deprivationofrightsunderlaw@gmail.com

CERTIFICATE OF SERVICE THRU THE COURT SYSTEM

Tiernan Cole, Assistant County Attorney

Florida Bar No. 87228

Charlotte County Attorney's Office

18500 Murdock Circle, Suite 573

Port Charlotte, FL 33948

Telephone: 941.743.1330

Facsimile: 941.743.1550

Tiernan.Cole@CharlotteCountyFL.gov

Terri.Forister@CharlotteCountyFL.gov

County.Attorney@CharlotteCountyFL.gov

# Exhibit A
# VIDEO OF PROTEST

https://drive.google.com/file/d/1Qcl_fURstD7ZAEeER7xZSYW9-xkHXjJY/view?usp=drive_web