UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

TONY PRIBBLE, IN PERSONAL
CAPACITY; JOANNE VERNON, IN
PERSONAL CAPACITY; AND
CHARLOTTE COUNTY,

      Defendants.

Case No. 2:25-cv-500-KCD-NPM

## **ORDER**

Every First Amendment case features its own unique flavor of expression. For Plaintiff Andrew Sheets, protesting outside a Charlotte County government building meant bringing along a television and a sign to broadcast curse words. The County, however, was an unwilling audience. After security handed Sheets a trespass warning and ordered him to leave the premises, he filed this lawsuit, claiming the County unlawfully silenced his constitutional rights. (*See* Doc. 30.) Defendants now move to dismiss the suit entirely, arguing that Sheets fails to state a valid claim and the individual defendants are shielded by qualified immunity. (Doc. 31.)[1] Sheets

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

has responded (Doc. 32), making this matter ripe. For the reasons below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.[2]

## I. Background

Because this case is before the Court on a motion to dismiss, we take the facts as Sheets pleads them. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

Back in June 2021, Sheets went to the South Annex of the Charlotte County government complex. He came prepared. He wore a body camera, towed a television in a wagon, and carried a sign displaying "Punta Gorda City Council are C*nts 4 Killing Free Speech." (Doc. 30 ¶ 24.) Sheets was admittedly "fishing." (*Id.* ¶ 17.) He wanted to protest a local ordinance that penalized indecent speech on signs—Punta Gorda, Fla. Code of Ordinances, ch. 26, § 11.5(z). (*Id.* ¶ 15.) And he wanted to see if the County would also deem speech indecent if it were broadcast on a TV. (*Id.* ¶ 17.)

---

[2] Sheets has filed numerous other cases in this Court over the past seven years stemming from his protests throughout Charlotte County. *See, e.g.*, *Sheets v. Angelini et al.*, 2:25-cv-653-SPC-NPM, *Sheets v. City of Punta Gorda, Fla.*, 2:24-cv-704-SPC-KCD; *Sheets v. City of Punta Gorda, Fla.*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Fla.*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv- 704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte Cnty. et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM; *Sheets v. Angelini et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF.

2

Once on scene, Sheets set the TV's volume "extremely low" because his verbal protest was "much louder than what the TV was broadcasting," which were the words "fuck" and "shit." (*Id.* ¶ 16.) Still, Defendant Joanne Vernon, a County engineer who worked in the Annex, could allegedly hear the television. (*Id.* ¶ 23.) She believed the noise was disruptive to County business because it was interrupting a webinar being held in the building. Vernon also heard other County employees complaining about the noise. (*Id.*)

Defendant Tony Pribble, a County Security Administrator, was called to the Annex. He saw Sheets playing the TV and also thought it was disruptive. So Pribble issued a trespass warning under Rule 10 of Charlotte County Ordinance 2016-027/Facility Rules, which reads:

> *ALL COUNTY FACILITIES ARE RESERVED FOR THE CONDUCT OF OFFICIAL COUNTY BUSINESS ONLY. THE FOLLOWING CONDUCT IS PROHIBITED IN OR ON COUNTY-OWNED AND MANAGED FACILITIES, INCLUDING BUILDINGS, LANDS AND CONVEYANCES (THERE MAY ALSO BE ADDITIONAL RULES SPECIFIC TO CERTAIN KINDS OF COUNTY FACILITIES SUCH AS LIBRARIES, PARKS, ETC.)*
>
> **THE FOLLOWING CONDUCT IS PROHIBITED BY COUNTY ORDINANCE 2016-027**
>
> …
>
> 10. Disruptive, harassing or unsafe behavior, including conduct which interferes with County employees or County officials in the performance of their duties, or interferes with the proper use of the County facility by others.
>
> …

3

> If an individual fails to immediately cease conduct prohibited by these Rules upon request, a Trespass Warning may be issued by the County Administrator (or his or her designee) pursuant to County Ordinance 2016-027.

(Doc. 31-1; Doc. 30 ¶ 43.) That piece of paper did two things: it forced Sheets to leave the property and barred him from returning for a year. (Doc. 31-1.)[3]

Sheets appealed the trespass warning to a special magistrate, who upheld the citation. (Doc. 31-2.) Sheets now sues the County, Pribble, and Vernon under 42 U.S.C. § 1983. (Doc. 30.)

## II. Legal Standard

"To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery*

---

[3] Ordinarily, a court deciding a motion to dismiss wears blinders, looking only at the four corners of the complaint. But there are sensible exceptions. Sheets left the trespass warning and the County Ordinance out of his pleading. Defendants, however, attached the warning to their motion. (Doc. 31-1.) The Court considers the trespass warning under the incorporation-by-reference doctrine because it is central to Sheets's claims and he does not dispute its authenticity in his response. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300-01 (11th Cir. 2024). The Court also takes judicial notice of Ordinance 2016-027, as it is not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Bryant v. Ford*, 967 F.3d 1272, 1275 (11th Cir. 2020).

*Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The reviewing court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

### III. Discussion

The operative complaint alleges five distinct claims under § 1983, all rooted back to the First Amendment. First, Sheets alleges that Pribble engaged in viewpoint discrimination when issuing the trespass warning. (Doc. 31 at 14-16.) Second, he claims that Pribble's actions amounted to unlawful retaliation against his protected protest activities. (*Id.* at 16-17.) Third, he accuses Pribble and Vernon of forming a civil conspiracy to violate his free speech rights. (*Id.* at 18-19.) Finally, he rounds out the complaint with two claims against Charlotte County, arguing that Facility Rule 10 is both facially unconstitutional and unconstitutional as applied to his conduct. (*Id.* at 19-24.) These claims are addressed in turn.

### Count I—Viewpoint Discrimination

Viewpoint discrimination is a particularly "egregious" form of speech suppression. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1279 (11th Cir. 2004). It happens when the government targets a speaker because of the specific opinion they express. *See Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) ("A restriction on speech constitutes viewpoint

discrimination when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

To keep this claim alive, Sheets must allege facts showing that Pribble targeted him not just for speaking, but for the specific ideological perspective he was expressing. *See Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1284 (11th Cir. 2025) ("After all, viewpoint discrimination requires a defendant to have based his conduct on the plaintiff's viewpoint."). The complaint, however, gives us no reason to draw that conclusion.

Even taking Sheets at his word that the trespass warning was an unjustified reaction to his speech, he has not pled a single fact suggesting Pribble took issue with his underlying *viewpoint*. For instance, he points to no one else who was permitted to cause a similar disruption simply because they held a more favorable view of the local government. Without facts showing that Pribble silenced Sheets because of the ideological side he took, rather than merely the manner in which he chose to express it, the viewpoint discrimination claim simply cannot get off the ground. *See Sheets v. Martin*, No. 2:25-CV-444-SPC-NPM, 2026 WL 74078, at *3 (M.D. Fla. Jan. 9, 2026) ("[The] conclusory allegation that [Defendant] targeted Plaintiff for his viewpoint is insufficient.").

At best, Sheets's viewpoint-discrimination theory is speculative. But "[m]ere speculation is insufficient to prevail on a First Amendment claim."

*Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, No. 03 C 8717, 2007 WL 9810896, at *3 (N.D. Ill. July 19, 2007); *see also Sheets v. Charlotte Cnty.*, No. 2:24-CV-958-JES-KCD, 2025 WL 1644084, at *5 (M.D. Fla. June 10, 2025). Count I is therefore dismissed.

### Count II—Retaliation

Sheets's retaliation claim, however, is a different matter entirely. To state a claim for First Amendment retaliation, he must show: (1) speech or activity protected by the First Amendment, (2) adverse action, and (3) a causal connection between the protected speech or activity and the adverse action. *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023). "We recognize First Amendment retaliation claims because [t]he Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Id.* at 579-80.

According to Sheets, he was engaged in a political protest on a public sidewalk behind the Annex building. In response, Pribble issued a trespass warning, ordering him off the property. Those facts easily clear the first two hurdles. *See Sheets v. Woelk*, No. 2:25-CV-61-KCD-DNF, 2026 WL 353195, at *3 (M.D. Fla. Feb. 9, 2026); *see also United States v. Hicks*, 980 F.2d 963, 970 (5th Cir. 1992) ("[A]s a general rule, simple profanity or vulgarity . . . is constitutionally protected speech.").

The real dispute is over causation. Pribble argues that the trespass warning was simply the logical, non-retaliatory outcome of Sheets violating the County's rule against disruptive behavior. (Doc. 31 at 9.) But at the motion to dismiss stage, we must take the plaintiff's factual allegations as true. Sheets claims he was not causing a disturbance, and his protest was inaudible to those inside the building. (Doc. 30 at 4.) Taking those facts together, it is entirely plausible to infer that the disruption rationale was merely a pretext. If Sheets was indeed protesting peacefully—albeit using vulgar words—and not disrupting County business, then jumping straight to a formal trespass warning looks a lot like an effort to punish his expressive conduct. That is enough to unlock the doors to discovery, and so the retaliation claim will proceed. *See, e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 87 (2d Cir. 2005) ("A professed security concern cannot, for example, be used to mask an improper reason for closing the courtroom door, most particularly aversion to the views of the person who seeks access. Avoidance of such viewpoint discrimination is, of course, at the heart of much First Amendment protection.").

Pribble also leans on the special magistrate's order upholding the trespass warning, suggesting that because he concluded Sheets was genuinely disruptive, that factual finding is somehow controlling here. (Doc. 31 at 8-9.) But Pribble offers no legal doctrine to justify that leap. If he

8

wanted to argue that the local administrative finding legally bars Sheets from relitigating the nature of his conduct, the proper vehicles for doing so are defenses like *res judicata* (claim preclusion) or collateral estoppel (issue preclusion). *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Pribble invokes neither. While a court evaluating a motion to dismiss may take judicial notice of public records like the magistrate's order, it may generally do so only to recognize that the judicial act occurred, not to elevate the magistrate's factual findings as absolute truth. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). A federal court cannot simply adopt administrative factual conclusions to bypass normal pleading standards—at least not without a properly briefed legal mechanism. Lacking that, we revert to the bedrock rule of this stage: the plaintiff's well-pleaded facts govern.

Pribble also tries to shield himself with qualified immunity, which protects government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). At this procedural posture, the inquiry is twofold: (1) do the facts alleged show that the official violated a constitutional right, and (2) was that right clearly established at the time of the misconduct? *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

The first question has already been answered. Taking the complaint as true, Pribble used a County rule as a pretext to punish Sheets for his political protest in a public forum. That is a plausible First Amendment violation. *See Locker v. City of St. Florian*, No. CV-08-S-907-NW, 2009 WL 10703405, at *5-8 (N.D. Ala. Oct. 27, 2009).

The answer to the second question is also yes. The Eleventh Circuit has "long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005). Under Sheets's narrative, there is no ambiguity: he was peacefully protesting on a public sidewalk with signs that contained simple profanity. Such activity has been protected for decades. *Cohen v. California*, 403 U.S. 15, 20 (1971), *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 191 (2021); *see also Hicks*, 980 F.2d at 970 ("[A]s a general rule, simple profanity or vulgarity . . . is constitutionally protected speech.").

If discovery reveals that Pribble was merely enforcing a content-neutral noise policy against a genuinely disruptive individual, he will have every opportunity to raise qualified immunity again at summary judgment. But right now, we are confined to the facts as Sheets pleads them. On those facts, Pribble knowingly retaliated against protected speech. Consequently, qualified immunity cannot protect him at the pleading stage. *See Merenda v.*

*Tabor*, 506 F. App'x 862, 868 (11th Cir. 2013) ("It is clearly established that it is a violation of the First Amendment to arrest an individual based on his protected speech.").

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Sheets alleges that Pribble forced him to terminate his protest. Being compelled by the state to pack up one's political dissent and exit the public square is a deprivation of liberty, not a mere inconvenience. That effective silencing, however brief, is an injury the Constitution recognizes. *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261 (11th Cir. 2006) (explaining that "nominal damages are . . . appropriate in the context of a First Amendment violation," even where the plaintiff "suffers no compensable injury").

**Count III—Conspiracy**

Under his conspiracy claim, Sheets maintains that Pribble and Vernon conspired to violate his First Amendment rights at the special magistrate proceedings. He says that Pribble and Vernon "did have an understanding to give false testimony and leave out [his] verbal protest, and blame the citation on noise and music, coming from the television." (Doc. 30 ¶ 79.)

According to Sheets, "the standard for conspiracy is extremely low." (Doc. 32 at 14.) Not so. "[T]o establish a § 1983 conspiracy, a plaintiff must

11

show that the defendants reached an understanding to violate [his] rights." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016). The court must be able to infer a shared, unlawful goal to violate the Constitution. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). This requires "some evidence of agreement between the defendants and willful participation." *Pittman*, 662 F. App'x at 880. There must be "particularized allegations that a conspiracy exists." *Id.*

Peeling back the conclusory labels, the only actual facts Sheets points to are that both defendants work for Charlotte County, and both testified against him at the special magistrate hearing. But simply alleging that two people engaged in parallel conduct is not enough to plausibly suggest an illicit agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Because Sheets has no other factual breadcrumbs indicating when, where, or how this supposed conspiracy took place—beyond his own naked assertion that an "understanding" existed—he has failed to cross the line from conceivable to plausible. To find a meeting of the minds here, we would have to engage in the kind of speculation that is expressly prohibited at this stage. *See Pepe v. Lajqi*, No. 3:25CV565/MCR/ZCB, 2025 WL 2815671, at *3 (N.D. Fla. Aug. 1, 2025). Consequently, Count III must be dismissed.

12

**Count IV—Facial Challenge**

In Count IV, Sheets takes aim at Charlotte County Facility Rule 10, bringing a facial challenge under the First Amendment. (Doc. 30 at 19-21.) At issue here, Rule 10 prohibits "[d]isruptive, harassing or unsafe behavior, including conduct which interferes with County employees or County officials in the performance of their duties, or interferes with the proper use of the County facility by others." (*Id.* at 20.)

Facial challenges seek "to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). They are "ordinarily disfavored and are generally harder to win." *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1333 (11th Cir. 2024). Sheets builds his facial challenge on two familiar pillars of First Amendment law: overbreadth and vagueness. The County counters that Rule 10 is perfectly clear and easily understood. The Court will take up each theory in turn, but the bottom line is the same: neither claim can survive.

### 1. Overbreadth

"The overbreadth doctrine prohibits the [g]overnment from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). According to Sheets, because political protests are inherently disruptive, Rule 10 sweeps in a vast amount of core First Amendment speech.

13

The Court is not convinced. The County has a legitimate interest in ensuring its facilities—like the DMV and the Tax Collector's office—can actually function and serve the public. Prohibiting behavior that actively interferes with County business on its property, like Rule 10, is a standard, viewpoint-neutral regulation of conduct. While one can certainly imagine a hypothetical scenario where a county official misapplies the rule to stifle peaceful, protected speech—which, of course, is exactly what Sheets alleges happened to him in Count II—that mere possibility does not render the entire rule facially invalid.

To win a facial overbreadth challenge, it is not enough for Sheets to dream up a few hypothetical scenarios where Rule 10 might misfire. He must show that a "substantial amount" of its applications are unconstitutional, judged in relation to its plainly legitimate sweep. *United States v. Hansen*, 599 U.S. 762, 770 (2023). That is a heavy lift. And one Sheets makes no real attempt to carry. That failure dooms his claim. *See Project Veritas v. Schmidt*, 125 F.4th 929, 961 (9th Cir. 2025) (affirming dismissal of facial First Amendment claim where plaintiff "ma[de] little effort to identify and weigh the conversational privacy statute's lawful and unlawful applications"); *Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 821 (M.D. La. 2025); *Cf. Microsoft Corp. v. United States Dep't of Just.*, 233 F. Supp. 3d 887, 910 (W.D. Wash. 2017) (concluding Microsoft had sufficiently pled its First Amendment

14

facial challenge by alleging specific examples of the statutes' alleged overbreadth and that "a substantial number of [the statute's] applications [were] unconstitutional compared to [its] legitimate sweep").

Sheets is happy to tell us how Rule 10 affected him, and he tosses in a few sweeping claims about how it might burden "ordinary persons." (Doc. 30 ¶¶ 87-88.) But a facial overbreadth claim requires more than personal grievances and vague hypotheticals. He never actually alleges—much less backs up with facts—that a substantial number of Rule 10's applications across the County are unlawful. *Blythe v. City of San Diego*, No. 24-CV-02211-GPC-DDL, 2025 WL 1570528, at *13 (S.D. Cal. June 2, 2025) ("Plaintiff fails to carry his burden here [in his First Amendment facial challenge] because his arguments almost exclusively focus on his own intended speech activities."). To invalidate an ordinance, like Sheets seeks here, you have to show that the net is designed so poorly that it scoops up a *substantial* amount of protected speech. *See Rameses, Inc. v. Cnty. of Orange*, No. 6:04-cv-0824JA0KRS, 2005 WL 2456203, at *3 (M.D. Fla. Dec. 15, 2004). Sheets's complaint clears no such bar. Accordingly, his overbreadth challenge fails. *Cf. Virginia v. Hicks*, 539 U.S. 113, 124 (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).").

15

### 2. Vagueness

"The void-for-vagueness doctrine is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments[.]" *Cotriss v. City of Roswell*, No. 19-12747, 2022 WL 2345729, at *6 (11th Cir. June 29, 2022). This "doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 807 (11th Cir. 2020). "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Mason v. Fla. Bar*, 208 F.3d 952, 958 (11th Cir. 2000).

Again, the text: "Disruptive, harassing or unsafe behavior, including conduct which interferes with County employees or County officials in the performance of their duties, or interferes with the proper use of the County facility by others." Sheets maintains that the words "disruptive, harassing, and unsafe" are facially unconstitutional because they are vague and overly discretionary. (Doc. 30 ¶ 87.) He highlights that the terms are not defined and could mean anything. He also gives some entertaining hypotheticals: eating a hot dog could interfere with county employee duties if the employee is hungry and loses focus watching you eat the hot dog; not wearing shoes could be considered unsafe behavior; and a judge in his robe could be cited

16

because a county employee is fearful he could trip, disrupting county business. (Doc. 30 ¶¶ 54, 55, 57.)

To start, a statutory term is not impermissibly vague simply because it lacks a statutory definition. *See, e.g.*, *United States v. Wedd*, 993 F.3d 104, 124 (2d Cir. 2021). Words like "harassment" and "unsafe," though undefined here, are common in public discourse. They are not obscure, highly technical terms; a person with ordinary common sense readily grasps what they mean. *See United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012). The word "disruptive" fares no worse.

Over fifty years ago, the Supreme Court showed us exactly how to handle regulations like Rule 10. In *Grayned v. City of Rockford*, the Court took up an anti-noise ordinance that barred disturbances to the "good order" of a school. 408 U.S. 104, 110-11 (1972). Sure, the ordinance failed to specify exactly how loud a person had to be to cross the line. But the Court did not sweat the lack of mathematical precision. Why? Because the rule's purpose made the standard obvious: the question was simply whether "normal school activity has been or is about to be disrupted." *Id.* at 112. The specific setting—the schoolyard—provided a built-in measuring stick, giving folks perfectly fair notice of what conduct was off-limits.

Rule 10 operates the same way. It may not specify the precise decibel level of disruptiveness required to earn a trespass warning, but anyone can

figure out the baseline by looking at where the rule applies: "county-owned and managed facilities." The whole point of those buildings is to conduct official County business. You do not need a law degree to understand what it means to grind the work of a local DMV or Tax Collector's office to a halt. So read in its proper context, a person of ordinary intelligence does not have to guess at where the line is drawn. They understand instinctively that the regulation prohibits noise and behavior that derails the daily operations of a county office. *See United States v. Renfro*, 702 F. App'x 799, 807 (11th Cir. 2017); *see also LeRoy v. Illinois Racing Bd.*, 39 F.3d 711, 715 (7th Cir. 1994) (observing that although regulation prohibiting "improper language" and "improper conduct" might be "seriously deficient" as a "norm addressed to the general public for the conduct of daily affairs," the regulation is not vague because, among other things, it is addressed only to Illinois horse-racing licensees).

Nor does the fact that Rule 10 leaves some room for law enforcement discretion banish it from the books. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 503 (1982). "Supreme Court precedent teaches that the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague." *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 729 (D.C. Cir. 2017); *see also United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021). "As always, enforcement requires the exercise of

18

some degree of police judgment." *Grayned*, 408 U.S. at 114. But because that judgment here is firmly tethered to the practical disruption of official County business, the degree of discretion afforded is perfectly permissible.

Finally, Sheets's creative hypotheticals offer no help. "It will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of disputed terms will be in nice question." *Grayned*, 408 U.S. at 110 n.15. But we do not tear up local laws just because someone can dream up a bizarre edge case. Mere "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Because Rule 10 is plainly valid for the vast bulk of its everyday uses, we can safely leave the hypothetical puzzles for another day. *See Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1202 (10th Cir. 2005).

**Count V—As-applied Challenge**

"An as-applied challenge is just what it sounds like—we ask whether the policy was or can be constitutionally applied to the plaintiffs' protected activity." *Moms for Liberty*, 118 F.4th at 1333. Sheets's complaint requires a bit of squinting to figure out the exact contours of his as-applied challenge. He seems to argue that Pribble misapplied Rule 10 while he was protesting

19

on a public sidewalk. (*See* Doc. 30 ¶ 95.) But if that is his argument, he has fundamentally misunderstood how this kind of claim works.

An as-applied challenge tests the constitutionality of a law as applied to a specific person's conduct. It does not police an officer's factual or jurisdictional mistakes in enforcing it. *See Homrich v. City of Wyoming*, 800 F. Supp. 3d 801, 826 (W.D. Mich. 2025). So when a plaintiff argues that his conduct falls beyond a statute, as here, he is "not challenging the statute itself, but rather the misapplication of that statute by the police." *Id.* So if Pribble lacked the authority to apply Rule 10 on a public sidewalk, that improper enforcement "would not demonstrate that the ordinance violates the First Amendment." *Langford v. City of St. Louis, Mo.*, 3 F.4th 1054, 1060 (8th Cir. 2021). Indeed, if we accept Sheets's reasoning that Rule 10 did not legally cover his conduct, it would be logically impossible to find that the rule, *as applied to him*, was unconstitutional, since the rule "was never applicable in the first place." *Johnson v. City of Saginaw*, No. 17-CV-13174, 2018 WL 11311306, at *3 (E.D. Mich. Aug. 27, 2018).

The only other theory Sheets offers is that Rule 10 is unconstitutional when applied to public sidewalks, like where he was protesting. (*See* Doc. 30 ¶ 94.) This argument looks a lot more like a repackaged facial challenge than an as-applied one. But we need not get bogged down in the labels, because the argument fails either way. Even if we treat Rule 10 as a speech

regulation extending to the public sidewalk, the First Amendment does not grant protesters an absolute right to cause a ruckus wherever and however they please. The government may always impose reasonable time, place, and manner restrictions on speech, even in traditional public forums like sidewalks. *United States v. Grace*, 461 U.S. 171, 177 (1983) ("[P]ublic places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be public forums.").

A rule that infringes on speech in a public forum passes constitutional muster so long as it is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Rule 10 easily clears that bar. It is completely content-neutral—it does not care whether a person is shouting about politics, advertising a business, or reading the phone book. It only regulates conduct that is disruptive or harassing. *See Wacko's Too, Inc. v. City of Jacksonville*, 134 F.4th 1178, 1185 (11th Cir. 2025) ("[A] content-neutral restriction is one that is justified without reference to the content of the regulated speech."), *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is

21

content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

The County has an obvious, significant interest in ensuring its facilities can actually function and its employees can do their jobs without crippling interference. Prohibiting genuinely disruptive behavior just outside the doors of a government building is a tailored, common-sense way to protect that interest. *See One World One Fam. Now v. City of Miami Beach*, 175 F.3d 1282, 1287 (11th Cir. 1999) ("[T]o meet the narrow tailoring requirement, the ordinance need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation . . . promotes a substantial government interest which would be achieved less effectively absent the regulation."). Considering the obvious justifications for the rule, it appears to further legitimate governmental interests which would be less well served otherwise. *See, e.g.*, *McDonald v. City of Pompano Beach, Fla.*, 556 F. Supp. 3d 1334, 1357 (S.D. Fla. 2021) ("[T]he court cannot invalidate a regulation simply because it concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.").

Finally, Rule 10 leaves Sheets with ample alternative ways and places to protest. *See, e.g.*, *Bloedorn v. Grube*, 631 F.3d 1218, 1241 (11th Cir. 2011). It does not banish him from the public square, nor does it categorically ban

22

protests outside County buildings. It does not forbid Sheets from standing on the public sidewalk with a picket sign, from handing out leaflets to passersby, wearing a shirt adorned with his chosen expletives, or engaging his fellow citizens in a conversation about his political views. What it forbids is specific, disruptive communication—projecting sound at a volume that brings government work to a standstill. The test for ample alternatives is not whether the optimal option is available. It is whether the ordinance forecloses an entire medium of public expression across the landscape of a particular community or setting. *See, e.g.*, *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 950 (11th Cir. 2022), *Chad v. City of Fort Lauderdale, Fla.*, 861 F. Supp. 1057, 1063 (S.D. Fla. 1994). That is simply not the case here.

## IV. Conclusion

Sheets has plausibly alleged that he was retaliated against for his political protest (Count II), and he deserves the chance to prove it. But his remaining constitutional theories (Counts I, III, IV & V) fail for the reasons discussed. Defendants' Motion to Dismiss (Doc. 31) is thus **GRANTED IN PART AND DENIED IN PART**. Pribble must answer the surviving claim within fourteen days of this order. The Clerk is **DIRECTED** to terminate Defendants Joanne Vernon and Charlotte County from the case.

23

**ORDERED** in Fort Myers, Florida on March 11, 2026.

Kyle C. Dudek
United States District Judge